# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 4:21cr10-AW

DANIEL ALAN BAKER

    Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorneys, and hereby responds to the Defendant's Motion for Reconsideration of Detention, ECF No. 34. For the reasons set forth below, the Court should deny the Defendant's invitation to release him on conditions.

### I. Factual Background

This case stems from the Defendant's knowing and intentional transmission in interstate commerce of two true threats to kidnap and injure the person of another. The first true threat was posted on

1

Facebook by the Defendant on or about January 12, 2021, as alleged in Count One of the Indictment. *See* ECF No. 20 ¶ 1(c).

The second true threat was posted on or about January 14, 2021, in response to a news article about the Tallahassee Police Department being "fully staffed and prepared ahead of any potential Inauguration Day protests," the Defendant requested a "Call to Arms" on the WTXL Tallahassee Facebook page. *See* ECF No. 20 ¶ 1(e). The "Call to Arms" included a photograph of an AK-47 style rifle at the top center of the page.[1] The conduct charged in the Indictment was the culmination of many months' worth of inflammatory rhetoric espoused by the Defendant on social media.

## II. Procedural Posture

On January 15, 2021, the Defendant was arrested pursuant to a federal arrest warrant. At his initial appearance, the Government moved for detention based on risk of flight and danger to the community. On

---

[1] As Magistrate Judge Michael J. Frank noted in his order finding probable cause, the AK-47 rifle was designed in 1947 for the armed forces of the Soviet Union. Because the AK-47 was used by nations adhering to the Warsaw Pact—a treaty establishing a mutual defense organization that put the Soviets in command of the armed forces of seven other member states—and is still used by nations and organizations who are unfriendly to the United States, the rifle has become a symbol of violent opposition to the United States and its citizens. *See* ECF No. 18 at n.1.

January 21, 2021, United States Magistrate Judge Michael J. Frank held a two-hour preliminary and detention hearing where he received evidence and testimony from one government witness and three defense witnesses. On January 25, 2021, Magistrate Judge Frank entered a comprehensive order detaining the Defendant as a danger to the community and a flight risk. *See* ECF No. 19. Among other things, Magistrate Judge Frank's order noted that the Defendant was a danger and flight risk because he:

- Participated in violent acts in the Middle East;
- Had access to two firearms at the time of his arrest and purchased a third AK-47 style rifle days before his arrest;
- Did not maintain steady employment;
- Lacked substantial ties to Tallahassee;
- Had foreign contacts and travel to foreign countries;
- Repeatedly made public endorsements of violence; and
- Used an alias.

ECF No. 19 at pp. 11-16.

The Defendant has remained in custody since his arrest and his trial is scheduled to begin on May 4, 2021, before United States District Judge Allen C. Winsor.

### III. Legal Standard

### A. Motion for Reconsideration of Detention

Title 18, United States Code, Section 3142(f) states as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

On a reconsideration motion, the Defendant is required to establish that (1) information exists that was not known to him at the time of the initial detention hearing and (2) that such information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance in court and the safety of the community as required. *United States v. Haynes*, No. 9:19-CR-80045, 2019 WL 5538300, at *1 (S.D. Fla. Oct. 28, 2019).

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme

4

Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases." *Serrano v. United States*, 411 F. App'x 254, 255 (11th Cir. 2011) (citing *United States v. Phillips*, 597 F.3d 1190, 1199-1200 (11th Cir. 2010)); *see also, e.g., United States v. Faller*, 2020 WL 1502983, at * 1 (S.D. Ga. Mar. 24, 2020) (Hall, C.J.). "In adjudicating motions for reconsideration in criminal cases, district courts have relied on the standards applicable to motions for reconsideration filed in civil cases pursuant to Rule 59, Federal Rules of Civil Procedure." *United States v. Brown*, No. 3:18-CR-89-J-34JRK, 2019 WL 7067091, at *1 (M.D. Fla. Dec. 23, 2019). "The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations and citations omitted).

Importantly, the purpose of a motion for reconsideration is not to ask the court to reexamine an unfavorable ruling in the absence of a manifest error of law or fact. *See Jacobs v. Tempur-Pedic Int'l., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). As such, a motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the" court's ruling. *Michael*

*Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

## B. Review of a Detention Order

Title 18, United States Code, Section 3145(b) states as follows:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

## IV. Argument

### A. The Defendant Has Not Met His Burden to Reconsider the Court's Detention Order

Because the Defendant appears to style his request as a motion for reconsideration, rather than an appeal to the district court of a magistrate judge's release order, the government will tailor its response accordingly. On a motion for reconsideration, "The only grounds for granting a Rule 59 motion are newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations and citations omitted). In addition, the Defendant must establish that (1) information exists that was not known to him at the time of the initial detention hearing and (2) that such information

6

has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance in court and the safety of the community as required. *Haynes*, 2019 WL 5538300, at *1. Here, the Defendant posits two points which he submits entitle him to release.

*First*, the Defendant argues that circumstances have changed, such that the Inauguration of the 46th President of the United States has come and gone, and thus, he no longer poses a danger. While it is true that the Defendant is charged with communicating two true threats that were related to—and transmitted around the time of—the Inauguration, the passage of time does not warrant reconsideration because, as argued at the detention hearing, the Defendant's dangerousness was not limited to a discrete moment in time. The conduct that led to the instant Indictment was the culmination of many months' worth of inflammatory rhetoric.

At the detention hearing, the Government presented evidence of the Defendant's military history and training, including time spent in the Middle East in armed combat with the People's Protection Units ("YPG"), a group fighting in Syria against the Islamic State of Iraq and Syria ("ISIS") and the Turkish Government. ECF No. 2 ¶¶ 6-7. The YPG is a

sub-affiliate of Kurdistan's Working Party ("PKK"), which has been designated a Foreign Terrorist Organization ("FTO") by the United States government. *Id.* at ¶ 7. The Defendant regularly boasted on social media about his affiliation with the YPG, including his status as a trained YPG sniper.

Magistrate Judge Frank noted in his detention order that the Defendant has prior military training, previously engaged in acts of violence, had ties to "Antifa," and indicated that he was working with militant friends. ECF No. 19 at 8, 11. *See also id.* at 11 ("A reasonable person could conclude from this that the Defendant had the training and inclination to carry out his threats, that he previously engaged in acts of violence, and that he is prepared to kill people."); *id.* at 12 ("The Defendant's penchant for violence, his proficiency with firearms, his efforts to obtain firearms, and his statement that he has "militant friends" who might very well help him obtain firearms, make him particularly dangerous to the community.").

The Defendant has also made statements about supporting violence against law enforcement officers and even publicly posted that he was attempting to ascertain the number of law enforcement officers in and

around Tallahassee. ECF No. 2 ¶ 45. His statements, however, are not innocuous, because they are supported by substantial steps taken in furtherance of his violent propensities. Particularly, during his arrest, when law enforcement identified themselves at the Defendant's residence, the Defendant slammed the door on the agents. The agents later seized two firearms (one fully loaded and chambered 12-gauge shotgun and one fully loaded and chambered handgun) from the residence.

But those two firearms were seemingly insufficient for the Defendant's Call to Arms, because the Defendant purchased an AK-47 style rifle on January 10, 2021, which was later seized by law enforcement at a Federal Firearms Licensed ("FFL") dealer in Tallahassee, Florida. The Defendant's behavior in the days leading up to his arrest is consistent with his more recent path to radicalization, which included traveling to organized protests in Nashville, Tennessee and Seattle, Washington, and his incendiary social media posts that regularly endorsed violence. Indeed, Magistrate Judge Frank relied upon these points, among others, in finding that the Defendant was a danger to the

community.[2] *See* ECF No. 19 at 15 ("[T]he Defendant repeatedly has expressed an interest in violence and repeatedly endorsed violent means to advance the political beliefs that he espouses . . . [H]e endorsed stabbing, the manufacture and use of bombs, violent revolution, taking up arms against then President trump, "death to amerikka," "slaying" his enemies, the murder of Turkish aviators, and the murder of U.S. military officers."). Importantly, immediately after his arrest, the Defendant made statements to law enforcement about having to resort to being a career criminal due to his arrest, and his desire to radicalize other incarcerated inmates.

In any event, the passage of time is not a basis to reconsider a detention order because this information was known to the Defendant when he requested a detention hearing, and thus, it is not newly discovered evidence. *See, e.g.*, *Haynes*, 2019 WL 5538300, at *2 (denying reconsideration of detention where defendant alleged government sought trial continuance justified her release). Even if the Defendant could

---

[2] It should be noted that the Defendant's Motion for Reconsideration does not address the Defendant's risk of nonappearance, including his substantial foreign ties and travel; periodic homelessness; and that he discussed fleeing the country with his roommate, which was raised at the hearing before Magistrate Judge Frank. Thus, even if the Court were to find that a motion for reconsideration as to dangerousness was appropriate, the Court should still detain the Defendant as a risk of flight.

10

establish that he was entitled to reconsideration based on a change in circumstance, the Court should deny his overture because he remains a danger to the community.[3]

*Second*, the Defendant seeks release because of his security level classification at the Federal Detention Center in Tallahassee ("FDC Tallahassee") as well as the COVID-19 pandemic, both of which, he submits, pose logistical hurdles to his conferral with counsel. But neither of the two are justifications for reconsideration, nor are they included as enumerated factors to be considered when a court determines if there are conditions of release that would reasonably assure a defendant's appearance or the safety of the community.

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court must take into account the following four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... or involves a minor victim ...;

---

[3] It bears mentioning that the Defendant appears to seek release to the same residence he inhabited at the time of his arrest. At the detention hearing, the Government presented evidence that the residence, wherein two firearms were seized, maintained no furnishings. In addition, the Defendant had only recently moved into the residence after a stint living in a tent in Tallahassee.

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Notwithstanding the fact that the Defendant has requested to be housed in the Special Housing Unit for his own safety, a security level classification is not one of the factors for the Court to consider in determining whether he should be released pending trial. The same goes for his ability to confer with counsel.[4]

---

[4] As an alternative, the Defendant could request an order from the Court to have him transported to the courthouse for consultation with counsel.

And although the dangers posed by the COVID-19 pandemic are slowly fading in the rear view mirror, the pandemic alone—without more—is not a basis for reconsideration, because the Defendant knew about the pandemic when he sought a detention hearing in January 2021. The Defendant does not argue that he stands a greater risk of contracting the virus because of a serious health condition. *See, e.g.*, *United States v. Kahn*, No. 19-80169-CR, 2020 WL 1582279, at *7 (S.D. Fla. Apr. 2, 2020) (denying reconsideration of bond based, in part, on the COVID-19 pandemic where the defendant had health issues). "[T]he current pandemic does not provide a basis for reconsidering the Court's Order of Detention since it is not material to the statutory factors to be considered under 18 U.S.C. § 3142(g)." *See United States v. Rushing*, No. 3:18-CR-13-J-25MCR, 2020 WL 2473454, at *2 (M.D. Fla. May 13, 2020) (denying motion for reconsideration).[5]

Accordingly, reconsideration based on the pandemic and his security level classification at FDC Tallahassee is not appropriate. As such, there is no reason to reconsider the Court's earlier finding that the

---

[5] With regard to the assertion about being housed in unsanitary conditions, the undersigned received confirmation from a Bureau of Prisons ("BOP") official that the Defendant's housing quarter is devoid of any unsanitary particles.

13

Government has proven by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community and by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure Defendant's appearance.

## V. Conclusion

The Court should deny the Defendant's Motion for Reconsideration of Detention.

Respectfully submitted,

JASON R. COODY
Acting United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 322415
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Stephen.Kunz@usdoj.gov

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 1004725
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Lazaro.Fields@usdoj.gov

## LOCAL RULE 7.1(F) CERTIFICATE

I certify that this memorandum contains 2,671 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

>*/s/ Lazaro P. Fields*
>LAZARO P. FIELDS
>Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served via CM/ECF to counsel of record on this 13th day of April 2021.

>*/s/ Lazaro P. Fields*
>LAZARO P. FIELDS
>Assistant United States Attorney