# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                              Case No.: 4:21cr10-AW

DANIEL ALAN BAKER

          Defendant.

_____/

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENSE WITNESSES

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorneys, and hereby moves to exclude the testimony of two defense witnesses as irrelevant to the issues to be decided by the jury.  In support, the following is provided:

## I.    Factual Background

This case stems from the Defendant's knowing and intentional transmission in interstate commerce of two true threats to kidnap and injure the person of another.  The first true threat was posted on Facebook by the Defendant on or about January 12, 2021, as alleged in Count One of the Indictment.  *See* ECF No. 20 ¶ 1(c).

1

The second true threat was posted on or about January 14, 2021, in response to a news article about the Tallahassee Police Department being "fully staffed and prepared ahead of any potential Inauguration Day protests," the Defendant requested a "Call to Arms" on the WTXL Tallahassee Facebook page. *See* ECF No. 20 ¶ 1(e). The "Call to Arms" included a photograph of an AK-47 style rifle at the top center of the page. The conduct charged in the Indictment was the culmination of many months' worth of inflammatory rhetoric espoused by the Defendant on social media.

Relevant to this Motion, the Government has sought to introduce evidence of the Defendant's military history with the People's Protection Units ("YPG"), a group fighting in Syria against the Islamic State of Iraq ("ISIS") and the Turkish Government. *See* ECF No. 35 at p.5. The Defendant seeks to admit the testimony of two witnesses that relate to tangential matters that will only confuse the jury.

*First*, the Defendant seeks to introduce the testimony of Adam M. Enders, Ph.D. Dr. Enders is an assistant professor in the Department of Political Science at the University of Louisville. The defense intends to

call Dr. Enders as a witness to illuminate the jury about George Soros and "his role in right-wing conspiracy theory."

*Second*, the Defendant seeks to introduce the testimony of David L. Phillips.  Mr. Phillips is the Director of the Program on Peace-building and Human Rights at Columbia University.  The defense intends to call Mr. Phillips to explain the YPG's role in Syria and the militia's relationship to the United States government.

On April 6, 2021, defense counsel provided each witnesses' curriculum vitae and advised the Government that he did not view either witness as an expert as they will not be offering opinions.  Defense counsel further likened Dr. Enders and Mr. Phillips to the witness in *United States v. Ransfer*, 749 F.3d 914 (11th Cir. 2014), a records custodian who explained how cell towers work.

## II.    Legal Standard

### A.    Lay Testimony

A lay witness may offer factual testimony so long as he "has personal knowledge of the matter," Fed R. Evid. 602, and opinion testimony if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony

or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," Fed. R. Evid. 701.

### B.    Expert Opinion

Under Federal Rule of Evidence 702, a court may allow "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

This Court must perform the critical "gatekeeping" function concerning the admissibility of expert evidence, the importance of which "cannot be overstated." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 n. 7 (1993); *United States v. Frazier*, 387 F.3d 1244, 1259–60 (11th Cir. 2004). In evaluating a district court's exercise of its gatekeeping role, the Eleventh Circuit utilizes a three-part test, considering whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier,* 387 at 1259-60 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) and *Daubert*, 509 U.S. at 589)).

Any proposed expert witness must first be qualified to express the opinions the expert intends to offer.  Under the plain language of Rule 702, expert status may be based on "knowledge, skill, experience, training, or education." As the Eleventh Circuit has noted, "experts may be qualified in various ways." *Frazier*, 387 F.3d at 1260.  The decision to qualify an expert rests within the sound discretion of the trial judge. *United States v. Hensel*, 711 F.2d 1000, 1006 (11th Cir. 1983) (citing *United States v. Johnson*, 575 F.2d 1347, 1360–61 (5th Cir. 1978)).

In order to evaluate the reliability of an expert opinion, the trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509

U.S. at 592–93. "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier*, 387 F.3d at 1262.

The Supreme Court in *Daubert* put forth several specific factors for evaluating the reliability of scientific testimony, which the Eleventh Circuit has summarized as:

> (1) whether the expert's theory can be and has been tested;
>
> (2) whether the theory has been subjected to peer review and publication;
>
> (3) the known or potential rate of error of the particular scientific technique; and
>
> (4) whether the technique is generally accepted in the scientific community.

*Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 593–94); *Frazier*, 387 F.3d at 1262 (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." (emphasis in original)).

The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact. *Frazier,* 387 F.3d at 1262.

Expert testimony is admissible under this requirement "if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir.1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen")).

Although the three criteria interrelate, they are distinct concepts and courts must take care not to conflate them. *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech.*, 326 F.3d at 1341). The burden of establishing these criteria rests on the proponent of the expert opinion. *Frazier*, 387 F.3d at 1260.

### III. Argument

**A. The Defense Witnesses Should be Excluded Because They are Not Lay or Expert Witnesses and Their Testimony is Not Relevant**

Dr. Enders and Mr. Phillips should be excluded because they have no "factual statements" to provide and otherwise are prohibited by the Rules of Evidence from rendering lay and expert testimony. A lay witness must have "personal knowledge of the matter." Fed. R. Evid. 602. Lay testimony, however, must be supported by personal knowledge

of a fact perceived by the witness that is material to the jury's consideration of the evidence.

For instance, a witness provides "factual statements," rather than opinion, when he gives a "summary of financial records" and "explains how the records were created." *United States v. Toll*, 804 F.3d 1344, 1354 (11th Cir. 2015); s*ee also Ransfer*, 749 F.3d at 938 (finding testimony of Metro PCS records custodian related to how cell phone towers work and how the witness mapped the cell phone tower locations for phones in evidence as factual statements); *United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006) (deeming testimony of financial expert who matched billing records to payroll and accounting records as factual).

And although lay witnesses are given some leeway to venture into the realm of providing opinion testimony under Rule 701, it must be "based on particularized knowledge gained from their own personal experiences," *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011), and be related to the witness's perceptions. As an example, in a case involving Medicare fraud at a clinic, social workers and therapists may testify based on personal knowledge as to the experience of treatment

providers at the fraudulently managed clinic. *See United States v. Moran*, 778 F.3d 942, 967 (11th Cir. 2015).

Alternatively, "A business owner or officer may provide lay opinion testimony because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Toll*, 804 F.3d at 1355 (permitting an accountant with 18 years of experience to testify about the financial statements he prepared and whether he believed they complied with Generally Accepted Accounting Principles) (cleaned up).

A witness to a conversation may provide "factual statements" if the witness perceived the conversation, but the witness may also offer an opinion regarding what was intended by the people engaged in the conversation. *United States v. Awan*, 966 F.2d 1415 (11th Cir. 1992) (permitting testimony under Rule 701 where the witness explained complicated financial terms used by parties to a conversation).

Indeed, it is reversible error for a witness to provide an opinion related to an event the witness did not personally observe. *See, e.g., United States v. Marshall*, 173 F.3d 1312 (11th Cir. 1999) (reversing where witness provided his opinion whether drugs were sold by the defendant but witness did not observe the drug transaction in question).

In the case *sub judice*, the witnesses proffered by the defense do not appear to have personal observations with regard to any of the facts they intend to testify to.  And the defense has notified the Government that, as it relates to Dr. Enders and Mr. Phillips, defense counsel does not "see either as an expert witness as they won't be offering opinions."  If they are not offering opinions, then they must be fact witnesses.  But fact witnesses they cannot be, because they lack personal knowledge of any of the facts directly involving the Defendant.

<u>Dr. Enders</u>

Based on representations made by the defense, the Government anticipates that Dr. Enders will testify about George Soros and his role in "right-wing conspiracy theor[ies]."  Although the affidavit in support of a criminal complaint for the Defendant's arrest made a passing reference to George Soros, because the Defendant posted about being funded by him, the Government does not intend to introduce *any* evidence at trial about Mr. Soros.  *See* ECF No. 2 ¶ 33 (referring to a comment the Defendant made on his YouTube video about George Soros and Antifa).

Dr. Enders presumably cannot testify from personal knowledge about Mr. Soros and his role in right-wing conspiracy theories.  Such

testimony would need to be presented as expert testimony under Rule 702, notwithstanding the fact that the defense has not noticed Dr. Enders as an expert and conceded that he will not be offering an opinion. Nevertheless, even if Dr. Enders, a professor of political science, is qualified to testify about Mr. Soros and any purported "right-wing conspiracy theory" that involves him, the Government doubts the reliability and helpfulness of his purported testimony anyway. *See Daubert*, 509 U.S. at 589.

As such, any evidence regarding Mr. Soros is not relevant and should be excluded because it is not a fact "of consequence" and has no "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, even if it is relevant, it should be excluded under Rule 403 because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Accordingly, Dr. Enders should be excluded as a witness.

<u>Mr. Phillips</u>

The Government anticipates that Mr. Phillips will testify about the YPG's role in Syria and the militia's purportedly amicable relationship

with the United States government.  Again, this evidence is of marginal relevance because the Government only intends to raise the Defendant's time with the YPG to demonstrate his proficiency with military tactics and combat, including his fascination with the AK-47 rifle, all of which are relevant to whether the Defendant intended his communications as true threats.  The relationship between the YPG and the United States government is of no consequence to the jury's ultimate decision: whether the Defendant intended to communicate true threats.

Mr. Phillips cannot be a fact witness, because on April 14, 2021, he testified before Magistrate Judge Martin A. Fitzpatrick that he had never met the Defendant.  Therefore, Mr. Phillips has no personal knowledge of any of the Defendant's time in the Middle East, which prohibits him from offering lay fact or opinion testimony.

It follows, then, that if the jury is to hear from Mr. Phillips, he would have to be qualified as an expert—again, which the defense has not provided notice of.  But he cannot testify as an expert either, because any proposed expert witness must first be qualified to express the opinions the expert intends to offer.  Under the plain language of Rule

702, expert status may be based on "knowledge, skill, experience, training, or education."

Based on the testimony he provided to Magistrate Judge Fitzpatrick, the Government anticipates that Mr. Phillips will testify that the YPG is not associated with the Kurdistan Workers' Party ("PKK"), a U.S. government deemed foreign terrorist organization, and that the YPG is an ally of the United States. Even assuming for the sake of argument that his experience in peace building qualifies him to testify about the YPG and its role in the Middle East, vis-à-vis, the interests of the United States government, it is not reliable or helpful to determine a fact in issue.

A prime example illustrating the reliability and helpfulness—or lack thereof—of his purported testimony is that it is directly refuted by James Jeffrey, a recent State Department representative for Syria, who unequivocally stated that the "YPG is the PKK."[1] This demonstrates that Mr. Phillips is not only (a) not qualified to be giving this testimony but (b) the methodology he uses is not sufficiently reliable as required by

---

[1] Jared Szuba, Outgoing Suria envoy reflects on Turkey, the Kurds and what everyone got wrong, Dec. 9, 2020, https://www.al-monitor.com/originals/2020/12/trump-syria-envoy-jeffrey-mideast-policy-turkey-erdogan.html.

*Daubert* and (c) it will not assist the jury in determining anything of consequence. If Mr. Phillips is permitted to testify, the Government will have no choice but to call its own expert to refute his misguided testimony.[2] This exercise is entirely unnecessary given that the Government does not intend to introduce any evidence in its case in chief about the YPG's relationship to the PKK; nor does the Government intend to admit evidence about the YPG's purported status as an "ally" of the United States.

Mr. Phillips's testimony is plainly irrelevant and irrelevant evidence cannot be admitted simply because it is disguised as expert testimony. "The Supreme Court has explained that relevance—or what has been called 'fit'—is a precondition for the admissibility of expert testimony, in that the rules of evidence require expert opinions to assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 318 (4th Cir. 2018) (internal quotations omitted).

---

[2] It should be noted that Mr. Phillips contradicts the Defendant himself. The Defendant was interviewed by an FBI special agent in March 2019 in Iraq where he unequivocally stated that when he joined the YPG "he expected PKK" and the PKK and YPG are "friends." The Defendant went on to state that he saw members of the PKK at the International Training Academy in Derik, Syria.

Evidence is only admissible if it is relevant, and only relevant if it "has any tendency to make a fact more or less probable than it would be without other evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401, 402; *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Even when evidence is relevant, a court may exclude it if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

This is not a trial about U.S. foreign policy and the Government only intends to briefly discuss the Defendant's time with the YPG in its case in chief to provide the necessary background for the jury and to support the Government's theory that the Defendant was trained and proficient with military tactics and weaponry, including the AK-47. In addition, it will put into context the Defendant's own social media posts, statements, and other media featuring him that relate to the Defendant's time with the YPG. This limited evidence on the YPG will support the Government's contention that the Defendant's communications were intended as true threats.

Accordingly, the Court should exclude Mr. Phillips from testifying.

## IV.    Conclusion

The Court should exclude the testimony of Dr. Enders and Mr. Phillips because they cannot provide lay or expert testimony.  Even if they could, their testimony should be excluded under Rules 401 and 403.

Respectfully submitted,

JASON R. COODY
Acting United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 322415
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Stephen.Kunz@usdoj.gov

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 1004725
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Lazaro.Fields@usdoj.gov

## <u>LOCAL RULE 7.1(F) CERTIFICATE</u>

I certify that this memorandum contains 2,961 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been served via CM/ECF to counsel of record on this 19th day of April 2021.

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
