# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

v.                                                     Case No.: 4:21cr10-AW

**DANIEL ALAN BAKER**

       **Defendant.**
_____/

## GOVERNMENT'S MOTION TO QUASH DEFENSE SUBPOENAS AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorneys, and hereby moves to quash two defense subpoenas served on Walt McNeil, Sheriff of Leon County, and Lawrence Revell, Chief of the Tallahassee Police Department. Because the facts and substance of this Motion to Quash overlap with the Defendant's Motion to Compel, ECF No. 42, it also serves as a response in opposition to the Defendant's Motion to Compel.

1

## I. Factual Background

This case stems from the Defendant's knowing and intentional transmission in interstate commerce of two true threats to kidnap and injure the person of another. The first true threat was posted on Facebook by the Defendant on or about January 12, 2021, as alleged in Count One of the Indictment. *See* ECF No. 20 ¶ 1(c).

The second true threat was posted on or about January 14, 2021, in response to a news article about the Tallahassee Police Department being "fully staffed and prepared ahead of any potential Inauguration Day protests," where the Defendant requested a "Call to Arms" on the WTXL Tallahassee Facebook page. *See id.* at ¶ 1(e). The "Call to Arms" included a photograph of an AK-47 style rifle at the top center of the page. The conduct charged in the Indictment was the culmination of many months' worth of inflammatory rhetoric espoused by the Defendant on social media.

The defense served trial subpoenas on Sheriff McNeil and Chief Revell, requesting that they, or someone from their agencies, appear to testify about "the intelligence regarding the threat to the Florida Capitol on the day of President Biden's inauguration." In addition, the

Defendant's Motion to Compel, ECF No. 42, requests that the Court order the Federal Bureau of Investigation ("FBI") to provide (1) the intelligence assessment made by the FBI regarding the threat to Florida's Capitol on the day of the Inauguration of the 46th President of the United States and (2) the identity of the individual(s) who can testify about such intelligence.

Because the intelligence assessment sought by the defense is not relevant to a fact to be decided by the jury—whether the Defendant intended to communicate true threats—the Court should quash the trial subpoenas served on Sheriff McNeil and Chief Revell and deny the Defendant's Motion to Compel. In addition, the Government requests that the Court prohibit the defense from inquiring or arguing about *other* threats or purported intelligence in front of the jury at the Defendant's trial.

## II. Legal Standard

### A. Federal Rule of Criminal Procedure 17

Federal Rule of Criminal Procedure 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be

offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17(c)(2) states: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Rule 17(h) prohibits a party from subpoenaing "a statement of a witness or of a prospective witness under this rule."

Rule 17(c) subpoenas may reach "any document or other materials, *admissible as evidence.*" *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (emphasis added). "Rule 17(c) was not intended to provide an additional means of discovery." *Id.* Nor was Rule 17(c) intended to broaden the scope of criminal discovery under Rule 16, or to provide a broad basis for a "fishing expedition to see what may turn up." *Id.* at 221. To meet the requirements for issuance of a Rule 17(c) subpoena, the defendant must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

4

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (internal quotations omitted).

In general, Rule 17(c) subpoenas require a showing of relevancy, admissibility, and specificity for the requested items. *Id*. at 700. "As the Eleventh Circuit has explained, 'the rule only reaches specifically identified documents that will be admissible in evidence at trial provided that the application for the subpoena is made in good faith.'" *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984). A defendant bears the burden of demonstrating a "sufficient likelihood" that the documents sought are material to an issue in the case. *Id*.

Rule 17 is "not intended to provide an additional means of discovery for any party in criminal cases." *Id*. Nor can Rule 17 be used "as a means for developing investigative leads which would lead to evidence producible at trial." *United States v. Noriega*, 764 F. Supp. 1480, 1492 (S.D. Fla. 1991). "[A] Rule 17(c) subpoena duces tecum cannot substitute for the limited discovery otherwise permitted in criminal cases and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena." *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010).

## B. Right to Compulsory Process

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor . . . ." U.S. Const. amend. VI. To establish a violation of the right to compulsory process, a showing of more than the mere absence of testimony is necessary. "Indeed, the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (citing U.S. Const. amend. VI) (emphasis in original).

To violate the right to compulsory process, the testimony must be "*relevant* and *material*, and . . . *vital* to the defense." *Id.* (quoting *Washington v. Texas,* 388 U.S. 14, 16 (1967) (emphasis in original)). The right to compulsory process is not violated where the subpoenaed witness is "wholly peripheral to the defendant's case." *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007).

## III.   Argument

### A.   The Subpoenas to Sheriff McNeil and Chief Revell Should be Quashed

The subpoenas served on Sheriff McNeil and Chief Revell should be quashed because they are unreasonable and oppressive, and because the information sought by the defense is irrelevant and immaterial. Federal Rule of Criminal Procedure 17(c)(2) permits the Court to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Here, compliance with the subpoena is unreasonable and oppressive because the information sought from Sheriff McNeil and Chief Revell is not relevant and immaterial and carrier with it no evidentiary value. The Government does not anticipate admitting evidence at trial about Inauguration Day "intelligence" unrelated to the Defendant. Such evidence does not carry with it a scintilla of relevance as to whether the Defendant intended his communications as true threats.

<u>Relevance and Materiality</u>

The "intelligence" sought is not relevant, material, and is of no evidentiary value. Under Supreme Court precedent, the defendant must show that "the documents are evidentiary and relevant." *Nixon*, 418 U.S. at 699–700 (internal quotations omitted). The defense appears to

conflate the concept of a "true threat" communicated by the Defendant, which is the precise issue before the trier of fact, with the acts or inactions of others. The focus of this trial will not be what law enforcement knew about *other* threats to the Florida Capitol on or around Inauguration Day, or even what law enforcement did not know about such threats. Rather, it will be about the Defendant, and what *he* intended when he pushed the "post" button on his Facebook account on January 12 and 14, 2021.

In support of its argument, the defense relies on an article published in the Tampa Bay Times on January 14, 2021—one day before the Defendant's arrest. *See* ECF No. 42 at Ex. 1. The article makes reference to a law enforcement only FBI-hosted conference call with state and local law enforcement agencies, wherein the author of the article states that "[t]he FBI indicated in the call that it has not received any specific intelligence about actual demonstrations targeting the state capital or other areas, according to sources familiar with the discussion." *Id*. at p. 1. Next, the author quotes Chief Revell stating that "local officials are not aware of any specific threats against Florida's Capitol but that law enforcement is preparing for the possibility of violence as a result of the recent warnings issued by the FBI." *Id*. at p. 2. Chief Revell

8

is further quoted as saying, "We do not have any specific intelligence." *Id.*

Because of this news article—relying on anonymous sources, no less—the defense requests that the Court order the FBI to disclose (1) the intelligence assessment made by the FBI regarding the threat to Florida's Capitol on the day of the Inauguration of the 46th President of the United States and (2) the identity of the individual(s) who can testify about such intelligence.

But the "intelligence" sought is not relevant to the ultimate issue before the jury—whether (1) the Defendant knowingly sent a message in interstate commerce containing a true threat to kidnap or injure the person of another and (2) that the Defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.  The Government need not prove how many, if any, *other* threats existed at the time the Defendant sent his communications on Facebook.  Nor need the Government prove whether there were, in fact, "armed racists bent on attacking Florida's Capitol." ECF No. 42 at p. 3.

As far as the Government is aware, the Defendant was not privy to law enforcement's "intelligence" when he posted his threatening communications on Facebook, which begs the question: Why is the "intelligence" relevant now? It's not. Even if the defense's position was factually accurate, that there were no "armed racists bent on attacking Florida's Capitol," ECF No. 42 at p. 3—which the Government does not concede—it offends common sense to suggest that law enforcement would publicly acknowledge that a threat or investigation exists or does not exist, absent extenuating circumstances not present here.

Such a disclosure would pose a danger to the community, law enforcement, and the subject of the investigation. Indeed, the Government highlighted this in an e-mail to defense counsel, noting that, in advance of the Inauguration, a 24/7 law enforcement command center was set up in Tallahassee in preparation for the threat of armed protests and counterprotests at the Florida Capitol. *See* ECF No. 42 at Ex. 2.[1] At bottom, even if law enforcement was unaware of any *other* threat to the Florida Capitol on Inauguration Day—again, which the Government

---

[1] This information was also widely reported in the media. *See, e.g.*, Mike Vasilinda, *Florida State Capitol security tight ahead of potential protests*, https://www.news4jax.com/news/local/2021/01/12/florida-state-capitol-security-tight-ahead-of-potential-protests/ (last visited Apr. 20, 2021).

does not concede—it does not in any way, shape, or form affect the Defendant's intent to communicate true threats.

The defense's argument about the importance of "intelligence" does not hold water for another reason. Thankfully not so, but for argument's sake, it is conceivable that law enforcement was not privy to "other threats" (*e.g.*, threats other than the one made by the Defendant) that could have come to fruition on Inauguration Day at the Florida Capitol. Unfortunately, the events of January 6, 2021, in Washington, D.C., illustrate that is not an idea entirely outside of the realm of possibility. This is precisely why the defense's position about *other* threats does not make the Defendant's communications any more or less true threats. What matters is what was in the Defendant's mind, not the minds of law enforcement officers or intelligence professionals.

While the defense attempts to cast the Defendant's statements as directed toward "armed racists," ECF No. 42 at p. 3, the reality is they were directed at *everyone* who viewed them, not the least of which were individuals who saw the Defendant's "Defend Tallahassee" Facebook event, ECF No. 20 ¶ (1)(c), others who subscribe to WTXL Tallahassee's Facebook page, *id.* at ¶ (1)(e), or even those who the Defendant expected

11

to clash with at the Florida Capitol. Contrary to what the Defendant appears to suggest, the law does not require that the threat be communicated directly to a specific individual. For instance, in *United States v. Stock*, the court found a true threat where the defendant was charged under Title 18, United States Code, Section 875(c) for posting a notice on Craigslist, a classified advertisement website, that contained the following:

> i went home loaded in my truck and spend the past 3 hours looking for this douche with the expressed intent of crushing him in that little piece of shit under cover gray impala hooking up my tow chains and dragging his stupid ass down to creek hills and just drowning him in the falls. but alas i can't fine that bastard anywhere ... i really wish he would die, just like the rest of these stupid fucking asshole cops. so J.K.P. if you read this i hope you burn in hell. i only wish i could have been the one to send you there.

728 F.3d 287, 290 (3d Cir. 2013).

Similarly, in *United States v. Khan*, the court found that the defendant communicated true threats where he made several posts on Facebook that were not communicated directly to a victim. 937 F.3d 1042, 1051 (7th Cir. 2019). The *Khan* court made plain: "A threat does not need to be communicated directly to the intended victim, or specific a particular victim, or specify when it will be carried out."). *Id*.

12

Next, the Defendant argues that his communications were conditioned on "armed racists" arriving at the Florida Capitol on Inauguration Day, and thus, purported intelligence that "armed racists" were not planning to be there would necessarily mean that his communications were not true threats. This logic would require law enforcement to sit and wait for all of the necessary conditions in a threatening communication to occur, before confirming that a violation of Title 18, United States Code, Section 875(c) has occurred.

For good reason, that is not the law. Courts have held that conditional threats qualify as true threats. *See, e.g.*, *United States v. Castillo*, 564 F. App'x 500, 501 (11th Cir. 2014) (affirming conviction under 18 U.S.C § 871(a) where the defendant responded to a picture posted on Facebook about the President, with "[T]hat's the last straw. If he gets re-elected, I'm going to hunt him down and kill him and watch the life disappear from his eyes."); *United States v. Callahan,* 702 F.2d 964, 965 (11th Cir.) (finding letter offering to kill the President on Inauguration Day if Secret Service could make arrangements to get the defendant "into the act" is a true threat), *cert. denied,* 464 U.S. 840 (1983); *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015)

("[A] statement may constitute a true threat even if it is conditional."); *United States v. Kosma*, 951 F.2d 549, 554 n. 8 (3d Cir. 1991) (holding that conditional threat including if the President went to Philadelphia he would be killed was a true threat); *United States v. Howell,* 719 F.2d 1258, 1260 (5th Cir. 1983) (hospital patient's statement that he would kill the President if released is a true threat), *cert. denied,* 467 U.S. 1228 (1984).

To be sure, the Defendant's threats were not conditional. *See, e.g.*, ECF No. 20 ¶ (1)(c) ("We will fight back . . . We will circle the state Capitol and let them fight the cops and take the building. Then we will encircle them and trap them inside . . . DO NOT RSVP TO THIS EVENT! JUST SHOW UP. WE ARE CHAOTIC MALESTROM OF WILLING HANDS . . . If you are afraid to die fighting the enemy, then stay in bed and live."); *id.* at ¶ (1)(e) ("We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE. This is an armed coup and can only be stopped by an armed community! If you're afraid to die fighting the enemy, stay in bed and live.").

Magistrate Judge Frank recognized that the Defendant's threats were not conditional. *See* ECF No. 18 at p. 15 ("Here, Defendant did not

14

make his threats explicitly contingent on some event that likely would not occur and which was beyond his control.  For example, he did *not* say: 'If and only if condition X occurs, then we will attack, kidnap, use firearms, *etc.*'  Accordingly, there is no 'expressly conditional language' for this court to consider.") (emphasis in original).

Thus, because the information sought is not relevant, and by extension not "admissible as evidence," the Court should quash the subpoenas to Sheriff McNeil and Chief Revell, because compliance would be unreasonable and oppressive. *Bowman Dairy Co.*, 341 U.S. at 220.  In addition, the Court should deny the Defendant's Motion to Compel.

### *Brady v. Maryland*

Next, the Defendant contends that the purported intelligence is *Brady* material and the Government's failure to disclose it violates due process. *See Brady v. Maryland*, 373 U.S. 83 (1963). The "intelligence" evidence is not *Brady* material or even required to be disclosed by the Federal Rules of Criminal Procedure.  Rule 16(a)(2) exempts from disclosure "reports, memoranda, or other internal government documents made by the attorney for the government or other government agent in connection with investigating or prosecuting the case." Rule

16(a)(2) further prohibits the "discovery or inspection of statements made by prospective government witnesses."

In addition to the Government's discovery obligations under Rule 16(a), the Government recognizes its obligations under *Brady*. "*Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a), since, eventually, such evidence may 'undermine[ ] the confidence in the outcome of the trial.'" *United States v. Newton,* 44 F.3d 913, 918 (11th Cir. 1995) (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)).

The Defendant's right to the disclosure of favorable evidence, however, does not "create a broad, constitutionally required right of discovery." *Bagley,* 473 U.S. at 675 n. 7. Indeed, a "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files," *Pennsylvania v. Ritchie,* 480 U.S. 39, 59 (1987), nor does the right require the prosecution to deliver its entire file to the defense. *See United States v. Agurs,* 427 U.S. 97, 109 (1976). "Rather, *Brady* obligates the government to disclose only favorable evidence that is material." *United States v. Jordan*, 316 F.3d

16

1215, 1252 (11th Cir. 2003). The "touchstone of materiality is a reasonable probability of a different result." *Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (quotations omitted). Generally, inadmissible evidence will not qualify as "material" information for *Brady* purposes. *See Wood v. Bartholomew*, 516 U.S. 1, 5-6 (1995) (noting that inadmissible polygraph test was not "evidence" and therefore was not material).

As discussed above, the "intelligence" sought is not favorable or material to the Defendant because it is entirely irrelevant to what the Government must prove to obtain a conviction. What law enforcement knew or did not know about *others* not associated with the Defendant does not disprove an element of the Government's case, nor does it exculpate the Defendant in any fashion. The law makes plain that threats—whether conditional or not—can amount to true threats. As a result, the purported intelligence is not *Brady* material and the Government's withholding of such information—if it exists—does not deny the Defendant due process.

## IV. Conclusion

Because the Defendant cannot prove that he is entitled to the purported intelligence under Rule 17 and because compliance would be unreasonable and oppressive, the Court should quash the subpoenas served on Sheriff McNeil and Chief Revell and deny the Defendant's Motion to Compel, ECF No. 42. In addition, the Court should prohibit the defense from inquiring or arguing about *other* threats or purported intelligence in front of the jury at the Defendant's trial.

Respectfully submitted,

JASON R. COODY
Acting United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 322415
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Stephen.Kunz@usdoj.gov

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 1004725
111 North Adams Street
Tallahassee, Florida 32301
(850) 942-8430
Lazaro.Fields@usdoj.gov

19

## LOCAL RULE 7.1(F) CERTIFICATE

I certify that this memorandum contains 3,436 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served via CM/ECF to counsel of record on this 21st day of April 2021.

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
