UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 4:21cr10-AW

DANIEL ALAN BAKER,

    Defendant.
_____/

**DEFENDANT'S RESPONSE TO
GOVERNMENT'S MOTION IN LIMINE**

The Government asks the Court to rule before trial that evidence of Mr. Baker's military history, his possession of firearms, and some of his electronic communications and social media posts are admissible. While Mr. Baker concedes some of his military history and his possession of firearms are relevant, nearly all the rest of the evidence is irrelevant and inadmissible.

Below is a listing of the evidence Mr. Baker assumes the Government intends to introduce. The evidence he objects to is in bold print.

As the defense reads the Government's Motion in Limine, it seeks to introduce:

1. Mr. Baker's service in the United States military
2. **That Mr. Baker went AWOL and received a less than honorable discharge**
3. That Mr. Baker joined the YPG and fought in Syria **(and maybe that the YPG is affiliated with the PPK, which has been designated a terrorist organization)**
4. **That upon returning from Syria, Mr. Baker admitted to stating he intended to lure Turkish pilots from bases in the United States and kill them (and maybe excluding his statement he never intended to do so)**
5. A video of his fighting in Syria with the YPG
6. Social media posts about his affiliation with the YPG
7. A social media post in which he claimed to have killed 16 people while overseas
8. **That Mr. Baker traveled to Seattle and patriated in the Capitol Hill Autonomous Zone (CHOP/CHAZ)**
9. A social media post to the effect that if those at CHOP/CHAZ wanted a revolution they needed to get AKs and start making bombs, but that no one listened to him.
10. **A social media post that the Government describes as "debilitating law enforcement officers," though it involved throwing balloons filled with paint**
11. A social media post about a courthouse burning in Nashville, Tennessee
12. A social media post in which Mr. Baker said he was a hardcore leftist
13. An October 26, 2020, YouTube video entitled "Training for the next mission," showing Mr. Baker firing an AK-47 style weapon in which he said: "I'm coming back to Syria and I'm going to shoot any Jihadis and Turks that get in our way."
14. A social media post referring to the lifting of a Facebook ban in which Mr. Baker says: "Holy fucking shit my ban is

2

over. Yall. So much has happened. Death to amerikka of course, fuck the president, current and elect."
15. Electronic communications with what the Government describes as "like-minded" individuals about descending on Tallahassee for a violent encounter on Inauguration Day." According to the Government, the communications included discussions "on tactics, strategy, [and] weapons the Defendant possessed and intended to possess"
16. **A social media post in which Mr. Baker complained about not having enough money to attend Tallahassee Community College and stating he would do anything to get the money.**
17. A January 14, 2021, post on Facebook about purchasing an AK-47 or a pistol from a friend's father.
18. Attempts to determine the number of law enforcement officers.

Though not mentioned in the Motion in Limine other than by reference to social media posts, presumably, the Government also intends to introduce:

1. **An October 2, 2020, post: "This is war. Are you willing to take up arms yet? Buy guns ad join us this November. We are voting from the rooftops." ECF No. 2 at 8.**
2. **An October 20, 2020, post advising of the coming civil war and stating: "God I hope the right tries a coup Nov 3d cuz I'm so fucking down to slay enemies again. *Id.* at 9.**
3. **A November 3, 2020, post in which Mr. Baker stated: "Prepare for war" and a post the following day: "Enjoying the peace and quiet until Thursday yall. It may be the last time some of us see peace." *Id* at 11**.
4. **A post showing "street judo" and a note that the technique would be effective against law enforcement with body armor. *Id.***
5. **A November 5, 2020, post: "Cops try to sound professional and just end up sounding like cold blooded nazis." *Id.***

3

6. A December 10, 2020, post: "Trump still plans on a violent militant coup. If you don't have guns you won't survive 2021" and a reference to "eating the rich." *Id.* at 12.
7. A December 12, 2020, post: "It's time for some of you to wake up and realize Trump is going to put up a fight. Some of your neighbors will shoot at you." *Id.* at 13
8. A December 13, 2020, post in which Mr. Baker tried to sell a piece of artwork and stated it was "gonna be valuable when I'm in prison." *Id*
9. A December 14, 2020, post: "Hospitalize your local fascist" with a caption "#stabnazis." *Id.*
10. A December 17, 2020, post with a drawing of what the Government suggests looks like bombs being dropped from the sky and the statement: "Jacksonville nazis gonne be real sad when this happens to their hq." *Id.*
11. A December 23, 2020, post: "If you give 2000 we will just buy MOAR GUNZ" *Id.* at 14.
12. A December 25, 2020, post: "If you don't take up arms against Trump then you are a coward." *Id.*
13. Posts regarding Mr. Baker's efforts to identify those who attacked the United States Capitol on January 6, 2021. *Id.* at 14-15.
14. Mr. Baker's "cover photo" of several soldiers posing behind YPG and Antifa flags holding AK-47 style rifles. *Id.* at 16.

In *Elonis v. United States,* 135 S. Ct. 2001, 2013 (2015), the Court held "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." Accordingly, the Government contends much of the evidence listed above

4

is relevant to prove either Mr. Baker posted his "Call to Arms" for the purpose of issuing a threat or that he knew it would be viewed as a threat.

Mr. Baker acknowledges evidence of his military service, be it in the United States Army or on behalf of the YPG, is relevant because it tends to show he was capable in participating in an armed defense of the Capitol, which would seem relevant to whether he intended a threat. The same would be true of his possession or attempted possession of firearms.

Some of the evidence, his visit to the Capitol Hill Autonomous Zone or his statement about being a "hardcore leftist," speaks only to his political leanings. The Government's unstated claim is that, given them, it is likely Mr. Baker intended his communication to be a threat. Factually, it is inaccurate. There is no reason to believe those who describe themselves as "hardcore leftists" or those who participated in the Seattle protest are likely to issue threats. Relevancy would depend upon the bias of a juror.

The same is true about Mr. Baker's AWOL status or his receipt of a less than honorable discharge. Neither says anything about the likelihood of Mr. Baker intending a threat. It only invites jurors to

5

conclude that Mr. Baker lacks character, and, therefore, must have committed the charged offense. *See Old Chief v. United States,* 519 U.S. 172, 180 (1997).

The Government justifies the introduction of much of the evidence based on its claim "the Defendant's warrior-like public disposition make it more likely that a jury will view [his "Call to Arms"] as true threats, and not the product of accident or mistake." ECF No. 35 at 20.[1] It amounts, however, to attempting to prove Mr. Baker, in posting his Call to Arms, acted in accordance with his character or a particular trait, something Rule 404 of the Federal Rules of Evidence prohibits.[2]

The Government argues the evidence is admissible either (a) because it is inextricably intertwined or necessary to complete the story or (b) as evidence under Rule 404(b) of the Federal Rules of Criminal Procedure. The Government cites a number of cases supporting its claim

---

[1] The justification seems offered in support of the evidence listed in paragraphs 4, 7, 9, and 13 of the first set of the above numbered paragraphs and all of the second set of numbered paragraphs.

[2] Rule 404(a)(1) reads: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."

that Mr. Baker's Call to Arms completes the story, explains it, adds context, or is inextricably intertwined. The cases, however, bear little resemblance to the circumstances here. None rely on the character or a trait of the defendant, but instead rely on specific multiple threats. *See United States v. Stevens,* 881 F.3d 1249, 1251-1252 (10th Cir. 2018) (where the defendant sent ten threatening messages to the Tulsa Police Department); *United States v. Alaboud*, 347 F.3d 1293, 1295-1296 (11th Cir. 2003) (where the defendant made 89 phone calls to his former lawyer threatening retribution upon the lawyer, the population of Florida, and the Jewish population); *United States v. Ivers*, 967 F.3d 709, 718-719 (8th Cir. 2020) (threats of harm to a judge made over two years); and *United States v. Castillo*, 564 F. App'x 500, 503 (11th Cir. 2014) (defendant made two threats to kill the President in the same Facebook conversation). *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998), was a drug case where evidence of the defendant's participation in the "Gucci Hole organization" was inextricably intertwined. As was true in the cited cases involving threats, the inextricably intertwined evidence was something far more direct than character or traits. His association with

7

the organization explained why the defendant was the target of the investigation, explained the relationship between the defendant and the informant, helped establish the credibility of the informant, explained the nicknames of some participants, and explained the goal of the conspiracy. *Id.* at 1404.

The 404(b) analysis fares no better. Much of the 404(b) caselaw involves drug and firearm offenses. The theory being that if a defendant possessed or sold drugs or firearms in the past, it is evidence that that he intended to do so in the instant case. Mr. Baker contends much of the caselaw is mistaken as it relies on propensity to establish that intent, i.e. the defendant must have intended to possess the firearm in this instant case because he possessed one in the past. *See, e.g., United States v. Gomez*, 763 F.3d , 345, 856 (7th Cir. 2014); *United States v. Smith*, 725 F.3d 340 (3d Cir. 2013). Mr. Baker's statement about the Turkish pilots, killing 16 people overseas, that those wanting to start a revolution needed AKs and bombs, burning a courthouse, being willing to do anything to get money to attend the community college, predicting a coming civil war, the threat posed by those loyal to President Trump, and

8

the other social media posts the Government seeks to introduce show a propensity to make reckless statements, but don't show whether Mr. Baker intended his Call to Arms to be a threat, believed it would be viewed as a threat, or that it would be viewed as a threat by a reasonable person. Past drug offenses and past firearm offenses may shed light on the defendant's intent regarding a new similar offense, but Mr. Baker's past bellicose statements, don't bear the same similarity to his call to defend the Capitol.

There are other reasons some of the evidence is inadmissible. The talk about killing Turkish pilots is particularly inflammatory. The video of Mr. Baker fighting in Syria adds nothing to the testimony about his service in the YPG other than the drama. Posts about his affiliation with the YPG serve no purpose other than to suggest it somehow makes Mr. Baker dangerous. The same is true of his claim to have killed 16 people. The claim about "debilitating law enforcement offices," at best, serves only to show bad character as does the post about a burning a courthouse in Nashville. That he claimed to be going back to shoot Jihadis and Turks bears no relevance to what he intended in his Call to

9

Arms. The statement about Death to amerikka and fuck the president is an invitation to convict Mr. Baker because of an unpopular statement. Likewise, his willingness to do anything for money to go to a community college has nothing to do with his Call to Arms.

The social media posts not specifically mentioned in the Motion in Limine seem to be an effort to show Mr. Baker's "warrior-like-disposition," and are inadmissible for the reasons already stated. The negative comments about law enforcement officers—the street judo post and the claim that the officers sound like "cold blooded nazis," also suggest an antipathy toward law enforcement officers, but nothing about whether Mr. Baker's Call to Arms was intended as a threat, whether Mr. Baker knew it would be perceived as a threat, or whether a reasonable person would see it as a threat.

While recognizing the Court's obligation to follow 11th Circuit precedent, Mr. Baker contends that precedent regarding Rule 404(b) is in error and that the Court should require that any relevance be established without relying on a propensity inference. Mr. Baker also objects to admitting any evidence pursuant to Rule 404(b) unless the

10

Government complies with the notice requirement of Rule 404(b)(3)(B). To the extent, the Court finds the evidence to which Mr. Baker objects to be relevant, he contends its probative value is substantially outweighed by the danger of unfair prejudice. *See* Rule 403, Fed. R. Evid.

## CERTIFICATE OF SERVICE AND WORD COUNT

I certify that a copy of the foregoing has been furnished electronically via ECF to Assistant United States Attorneys Lazaro Fields and Stephen Kunz this 21st day of April 2021. This motion has 2,370 words.

                Respectfully submitted,

                */s/ Randolph P. Murrell*
                Randolph P. Murrell
                Federal Public Defender
                Florida Bar No. 220256
                227 N. Bronough St., Ste. 4200
                Tallahassee, FL 32301
                Phone (850) 942-8818
                Attorney for the Defendant