UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 4:21cr-10-AW

DANIEL ALAN BAKER,

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Daniel Baker's two convictions for violating 18 U.S.C. § 875(c) rest upon his "Call to Arms," which was directed at a group that apparently did not exist, conditioned upon unlikely events that never occurred, and based on an objectively legitimate concern. These circumstances place his offenses outside the typical violation of a § 875(c) offense. Given that and given the inevitable comparison to sentences imposed on those individuals who participated in the attack on the Nation's Capitol on January 6, 2021, and the command of Congress that sentences "promote respect for the law," 18 U.S.C. § 3553(a)(2)(A), a sentence significantly below the advisory guideline range would be "sufficient" to fulfill the goals of sentencing. 18 U.S.C. § 3553(a).

*I. The Offense*

Mr. Baker posted his "Call to Arms" on January 12, 2021, on his Facebook page and on January 14, 2021, on the Facebook page of a Tallahassee TV channel.[1] As detailed in the presentence report and shown at trial, he announced in the January 14 posting that "armed racist mobs" were planning "to storm every American state Capitol." He stated, "We will fight back," and explained the strategy: "We will circle the state Capitol and let [sic] fight the cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber available." He added: "We must encircle them so they cannot escape down Apalachee Parkway. Militant friends will . . . push down Tennessee St and around Cascades Park with vehicles and coral [sic] the trump terrorists into the Capitol building." The message included a claim that "[w]e have already recruited an army [sic] armed combat veterans and volunteers." In capital letters he advised: "REMEMBER THAT THE COPS WONT PROTECT US BECAUSE THE COPS AND THE KLAN GO HAND IN HAND!" He concluded with: "If

---

[1] Government trial exhibit 1b was the January 12, 2021 posting. Government trial exhibit 2b was the January 13, 2021 posting.

you are afraid to die fighting the enemy, then stay in bed and live." The posting two days later was shorter, but much the same. It stated: "Let them take the capitol and fight with the cops, SURROUND THEM AND TRAP THEM INSIDE!" He added: "This is an armed COUP and can only be stopped by an armed community!"[2]

Mr. Baker acted following the January 6, 2021, assault on the Nation's Capitol. Many thought extremists were planning similar attacks on state capitols in the days leading to President Biden's inauguration or the day of his inauguration.[3]

---

[2] Mr. Baker's Call to Arms matched some of the rhetoric of the day. An Associated Press quoted an online post of the Chairman of the St. Croix, Wisconsin Republican Party in which he urged followers to "prepare for war." Joe Reaves and Julie Smyth, *Some in GOP talk of civil war*, TALLAHASSEE DEMOCRAT, Jan. 17, 2021. The article states Phil Reynolds, "a member of the GOP central committee in California's Santa Clara County, declared on Facebook that "The war has begun. Citizens take arms!" Id. The Seattle Times reports state Representative Robert Sutherland wrote "prepare for war," "on his Facebook site, after declaring that 'Joe Biden is not now, nor will ever be my President.'" Danny Westmeat, *'Prepare for war': A local GOP official goes all-in with election conspiracy theories*, THE SEATTLE TIMES, December 16, 2020.

[3] See Defense Trial Exhibit 3, A CNN news article entitled "Extremists intensify calls for violence ahead of Inauguration Day," a link to which Mr. Baker included in his January 14, 2021, Facebook posting.

As he testified, Mr. Baker was unsure when the expected attack on the Florida Capitol might occur, but he thought it was most likely on January 20th. As it turned out, about a dozen protestors showed up that day waving signs. Mario Ariza and Gary Rohrer, *A Smattering of protestors gather at Florida Capitol on Inauguration Day,* ORLANDO SENTINEL, January 20, 2021.[4] None attacked the Capitol. The outcome was consistent with intelligence available to law enforcement before the 20th. Mr. Baker's claim to have recruited an army of armed combat volunteers was equally unfounded. As he testified at trial, his only recruit was his roommate who was not an armed combat volunteer.

*II. The Case Against Mr. Baker*

The bulk of the case against Mr. Baker rested on evidence the Government relied upon to prove Mr. Baker's subjective intent. The claims are included in the presentence report, and they consist of messaging and posts that preceded the Call to Arms. But as with Mr. Baker's claim to be a trained sniper and his boasts of being trained in Jiu

---

[4] Available at: https://www.orlandosentinel.com/politics/os-ne-tallahassee-inauguration-protests-20210120-5husp4zsgffzdkfbnxymmnffne-story.html.

4

Jitsu, much of it is more prosaic than what a first glance might suggest.[5] Much of it reflected his left-wing philosophy, more bombastic than indicative of what Mr. Baker intended by his Call to Arms. Much was intended to rile those who Mr. Baker saw as supporters of President Trump, white nationalists, or racists. Some, like his claim to have financial backing from George Soros were meant to mock those same individuals. Similarly, other posts, like "buy MOAR GUNZ" and the "voting from the rooftops" parroted popular right-wing memes.[6] His post about the number of law enforcement officers, contrary to the one-time suggestion he was gauging the resistance to his efforts, was, as Mr. Baker explained at the trial, about his concern that the officers could not defend the Capitol.

Early in the case Mr. Baker's service in the YPG and that organization's ties to the PPK, played a role in Mr. Baker's detention.[7]

---

[5] Mr. Baker's trial testimony and that of Paul Arnold was that Mr. Baker had earned only a blue belt in Jiu Jitsu, one step above the entry level white belt. Mr. Baker testified he was a good shot but had no training as a sniper.

[6] See, for example, the attached Exhibit 1.

[7] See Affidavit in Support of Criminal Complaint (ECF No. 2 at 4); Order of Detention Pending Trial (ECF No. 19 at 11); and Government's

The importance of the claim that the PKK was a terrorist organization faded once the defense presented evidence about the role of the YPG as an ally of the United States in the fight against ISIS. Still his participation with the YPG figured prominently in the trial. Like the evidence about his pre-January 12 posts and conduct, however, it said little about how a reasonable person would view his Call to Arms.

*III. The Heartland of Cases*

Most importantly, the circumstances of his case bear little resemblance to the heartland of cases. A review of the six published decisions going back to 2018, show that all had identifiable victims, included either unconditional threats or threats conditioned upon likely events, and lacked a claim of legitimacy:

- *United States v. Howard*, 947 F.3d 936, 940 (6th Cir. 2020): The defendant, who was serving the supervised release portion of his federal sentence, left a voice mail message for former Attorney General Eric Holder at the law firm where Mr. Holder was a partner: "I am going to murder you." The defendant identified

---

Response to Defendant's Motion for Reconsideration of Detention (ECF No. 39 at 8).

himself and complained about the 50-month prison sentence he had served. *Id.* He denied placing the call, but the jury found him guilty of the offense. The Court imposed a 30-month sentence. *Id.* at 941.

- *United States v. Nissen*, 432 F.Supp.3d 1298, 1304 (D. N.M. 2020): About a half hour after a New Mexico Police officer stopped the defendant for a traffic violation, the defendant called a police dispatcher and said: "You guys got some of the stupidest fucking pigs on the road. The next time someone violates me like that on the road, I'm gonna put a bullet in that fucking pig's head . . . and the next time I'm gonna take my revolver out and put that motherfucker drop dead." *Id.* Later that month, the defendant called the Police Department became "verbally combative and threatened to shoot the [NM State Police] employee in the head." *Id.* A jury convicted the defendant. PACER shows the court has not yet sentenced the defendant.

- *United States v. C.S.*, 968 F.3d 237, 240 (3d Cir. 2020): The seventeen-year-old defendant participated in an online chat group, which "was dedicated to discussing the Islamic State [ISIS]," "used a screenname that evoked allegiance to Islamic fundamentalist

7

guerrillas and shared a photo of himself wearing a headscarf and a headband of another terrorist organization, Hamas." In one conversation, he said he was willing to plan an attack, agreed that an attack on the Washington monument would be "amazing," suggested shooting at bystanders from inside the Washington monument, and said he was willing to "attack america under the caliphate flag." *Id.* at 240-241. He spoke of churches in his area and of the possibility of targeting one, *Id.* at 241, saying if "Christians trigger me then I go at the church." *Id.* at 245. He made similar statements to a confidential informant and mentioned a particular nearby church. *Id.* at 242.

- *United States v. Khan*, 937 F.3d 1042, 1046 (7th Cir. 2019): "Over a seven-week span, Mohammad Khan used Facebook and his job as an Uber driver to threaten and prepare for mass murder. He posted messages threatening to 'kill,' 'shoot,' 'hunt,' 'murder,' and 'put bullets in his "targets.' Khan's 'targets' included 'college student[s],' 'vulnerable individuals,' people 'walking their dogs,' 'high net worth individual[s],' and 'witnesses' that 'get [in] the way. *Id.* He aimed for 'a real human tragedy' and 'claim[ed] the loop area of Chicago to

8

the Northern Lincoln Park area' as his 'free kill zone.' Worse, Khan planned to 'purchase a [G]o[P]ro camera, strap it to [his] chest or forehead, record the killings, and upload them onto Facebook for everyone around the world to see the grisly footage of death.'" *Id.* The jury convicted him, and the court sentenced him to 41 months. *Id.* at 49.

- *United States v. Ivers*, 967 F.3d 709, 712-713 (8th Cir. 2020): The defendant who was on probation for a stalking charge that arose out of threats he had made to a state judge, mailed threats to a federal judge who ruled against him in a civil suit. The materials he mailed included statements such as "'I do not know where I am sleeping tonight! Think about it!'; 'I am sick and tired of this fucking bullshit!'; 'I want my money . . .'; 'I will not negotiate!!!': 'Have I made myself clear!!!'; 'I am in dire straits!'; and 'I am becoming a very dangerous person!!!'" *Id. at 713*. When Marshals deputies went to speak with the defendant, he said he was "a walking bomb." *Id.* In a subsequent visit from the Marshals, the defendant said "[I]f they're living in fear, too bad. It's what they deserve." *Id.* at 714. In a phone call he made to a lawyer reviewing his case, the defendant

9

made what the lawyer described as "a death threat" against the Judge. *Id.* A jury convicted the defendant of one count of threatening to murder a federal judge and one count of a § 875(c) violation. *Id.* at 712. The court sentenced him to 18 months of imprisonment. *Id.*

- United States v. Stevens, 881 F.3d 1249, 1252 (10th Cir. 2018): A Tulsa police officer shot and killed an African American, which led to national headlines and reignited the debate about police use of force against minorities. Three days after the shooting and for several days afterwards, the defendant sent threatening messages "via an online form the public could use" to file complaints against Tulsa Police officers. Id. In the first of the messages, the defendant threatened to "execute[]" "[t]he psychotic pile of s--- who MURDERED the unarmed civilian . . ." Id. In the second, he wrote "[t]he psycho c--- who never should have been given a badge, as well as all her cohorts who patted her on the back and said "Good Shoot" are going to be executed unless you put them behind bars on MURDER charges." Id. at 1257. He went on in the same vein in the next eight messages, adding prosecutors, judges, the police chief,

10

and other officers to the list he was threatening to "execute." Id. at 1257-1258. Indicted for 10 counts of 18 U.S.C. § 875(c) violations, the defendant entered guilty pleas to five counts. The court sentenced him to 12 months of imprisonment. Id. at 1252.

In *Howard*, the threat was directed toward former Attorney General Eric Holder. In *Nissen*—members of the Tulsa Police Department. It was a nearby church in *C.S*; college students, people walking their dogs and a long list of others in *Khan*; a federal judge in *Ivers*, and primarily Tulsa Police officers in *Stevens*. None included targets that may not have existed. None included targets that didn't exist.

None involved threats conditioned upon events unlikely to occur or events shown to have never occurred. The defendant in *Howard* said only that he would murder Eric Holder. In *Nissen*, it would take only a traffic stop to initiate the shooting. In *C.S*, the defendant was waiting for "Christians [to] trigger [him]," but he also spoke of attacks without any condition. No conditions were mentioned in *Khan*. The defendant in *Ivers* may have been trying to influence the judge, but omitted mention of any specific conditions. In *Stevens*, the defendant, at one point, announced he

11

would shoot officers unless some were "put . . . behind bars," but, for the most part, was announcing his intent to kill police officers.

The defendant in *Howard* said he would murder Eric Holder because the defendant was angry about having been sentenced to prison. In *Nissan*, the defendant was upset about having been stopped for a traffic offense. In *C.S*, it was a matter of furthering the goals of the Islamic state. It was a list of personal grievances in *Khan*, an adverse court ruling in *Ivers*, and revenge for a police shooting in *Stevens*. None involved anything like defending a state capitol from an assault.

Even when the Sentencing Guidelines were mandatory, courts considered whether a case was outside the "heartland" of the applicable guidelines in deciding whether to depart from the guideline range. *United States v. Hoffer*, 129 F.3d 1196, 1200-1201 (11th Cir. 1997). "A case was outside the heartland only if there was something unusual, either about the defendant or the circumstances surrounding the crime . . . That determination was made by comparing the facts of the case to the fact of other cases falling within the heartland of the guidelines." *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010).

Now, a district court may impose a below-guideline sentence if the case "falls outside the 'heartland' to which the [Sentencing] Commission intends individual Guidelines to apply," if "the Guideline sentence fails properly to reflect the § 3553(a) considerations," or "because the case warrants a different sentence, regardless." *Rita v. United States*, 551 U.S. 338 (2007). *See also United States v. Valdes*, 298 F.App'x. 927, 930 (11th Cir. 2008). For purposes of appellate review, "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the commission intends individual Guidelines to apply. *Rita,* 551 U.S. 351."

Here, the "heartland" amounts to those cases where the threat is aimed at a known or at least real victim, unconditional or at least conditioned upon events likely to occur, and that lack any tie to legality. Mr. Baker's Call to Arms falls outside that heartland because there were not armed racists planning to attack the Capitol, because it was conditioned upon a group of armed racists overrunning officers defending

13

the Capitol, and because the stated goal was to defend Florida's Capitol from an assault like the one that occurred on the Nation's Capitol.[8]

*IV. Comparison to January 6 Cases*

There is the additional factor of comparisons that will be made between Mr. Baker's case and those who participated in the January attack on the United States Capitol. Indeed, the probation office has recommended the Court make the comparison "to avoid disparate sentences." PSR ¶ 102.

Only one individual has thus far been sentenced for a felony offense—a Paul Hodgkins for obstruction of an official proceeding, a violation of 18 U.S.C. 1512(c)(2). Spencer S. Hsu, *First felony defendant sentenced in Capitol riot, gets eight months in prison*, WASHINGTON POST, July 19, 2021.[9] *See also* United States v. Paul Hodgkins, Case No. 1:2021cr188,

---

[8] In the famous 1859 incident at Harper's Ferry armed citizens and militia groups attempted to retake the federal arsenal seized by a group commanded and organized by the abolitionist John Brown. See the National Park Services webpage at: https://www.nps.gov/articles/john-browns-raid.htm.

[9] Available at: https://www.washingtonpost.com/local/legal-issues/first-felony-sentence-capitol-riot/2021/07/19/65a54c9a-e897-11eb-8950-d73b3e93ff7f_story.html

14

ECF No. 37 (D. D.C.). The court sentenced him to eight months of imprisonment. *Id.*[10]

Mr. Baker acknowledges the difficulty in comparing one case to another, but the threat posed by Hodgkins was considerable and real. As explained in the statement of facts, "Hodgkins knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building, and . . . did so with the intent to corruptly obstruct, influence, and impede an official proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States." United States v. Paul Hodgkins, Case No. 1:2021cr188, ECF No. 23 at 5. Mr. Hodgkins had apparently planned for the offense as he carried protective eye goggles and white latex gloves in his backpack. *Id.* at 3.

*V. Conclusion*

The guideline range calculated in the draft presentence report is 33-41 months. Mr. Baker has filed objections to that calculation, but even

---

[10] Mr. Baker assumes subsequent sentences will be much like the sentence the court imposed on Mr. Hodgkins. Then, too, this Court lacks the ability to amend Mr. Baker's sentence should it incorrectly guess at what future sentences might be.

15

a sentence in line with the defense calculations would be based on the typical case and fails to consider the differences between Mr. Baker's case and, for example, the six published decisions since 2018. It would also fail to consider the inevitable comparison between Mr. Baker's case and those who attacked the Nation's Capitol, ignoring the Congressional mandate that sentences must "promote respect for the law."18 U.S.C. § 3553(a)(2)(A). For these reasons, Mr. Baker asks the Court to impose a sentence significantly below the advisory guideline range, a sentence that would be "sufficient" to fulfill the goals of sentencing. 18 U.S.C. § 3553(a).

## CERTIFICATE OF SERVICE AND WORD COUNT

I certify that a copy of the foregoing has been furnished electronically via ECF to Assistant United States Attorneys Lazaro Fields and Stephen Kunz this 3rd day of September 2021. This motion has 3,203 words.

Respectfully submitted,

*/s/ Randolph P. Murrell*
Randolph P. Murrell
Federal Public Defender
Florida Bar No. 220256
227 N. Bronough St., Ste. 4200
Tallahassee, FL 32301
Phone (850) 942-8818
Attorney for the Defendant